Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL V

| | | |
|---|---|---|
| MUNICIPIO DE VEGA BAJA<br>**Recurrido**<br><br>V.<br><br>ÁNGEL GINES MONTES<br>**Peticionario** | KLCE202301450 | *CERTIORARI*<br>procedente del<br>Tribunal de Primera<br>Instancia Bayamón<br><br>Núm. Caso:<br>D AC2017-0660<br><br>Sobre:<br>Sentencia Declaratoria |

Panel integrado por su presidente, el Juez Hernández Sánchez, la Jueza Romero García y la Jueza Martínez Cordero.

**Hernández Sánchez, Juez Ponente**

### RESOLUCIÓN

En San Juan, Puerto Rico, a 18 de enero de 2024.

El 22 de diciembre de 2023, el señor Ángel Ginés Montes (señor Ginés o peticionario) compareció ante nos mediante un *Certiorari* y solicitó la revisión de una *Resolución* que se dictó el 15 de noviembre de 2023 y se notificó el 22 de noviembre de 2023 por el Tribunal de Primera Instancia, Sala Superior de Bayamón (TPI). Mediante el aludido dictamen, el TPI declaró No Ha Lugar a la *Moción de Sentencia Sumaria* y la *Moción Reiterando Sentencia Sumaria* que presentó el señor Ginés.

Por los fundamentos que expondremos a continuación, ***denegamos*** el recurso de epígrafe.

I.

El 19 de octubre de 2017, el Municipio de Vega Baja (Municipio o recurrido) presentó una *Demanda* sobre restitución de fondos públicos obtenidos por fraude, sentencia declaratoria, y solicitud de ejecución contra el señor Ginés, Jane Doe, y la Sociedad Legal de Gananciales compuesta por ambos (en conjunto, parte demandada).[1] En primer lugar, alegó que el señor Ginés presentó el caso civil núm. DAC2007-3886 sobre expropiación a la inversa en su contra. Señaló que en esa *Demanda* el peticionario alegó que había sido privado de

---

[1] Véase, págs. 1-7 del apéndice del recurso.

utilizar una propiedad ubicada en el municipio de Vega Baja la cual le pertenecía en pleno dominio toda vez que la Junta de Planificación había emitido una consulta de ubicación para el desarrollo de un estacionamiento en dicha propiedad. Sostuvo que en ese caso se llegó a una *Estipulación por Transacción* conforme a la Ley Núm. 81 de 30 de agosto de 1991, según emendada, también conocida como la *Ley de Municipios Autónomos de Puerto Rico*, 21 LPRA sec. 4001 y el señor Ginés aceptó traspasar la titularidad de la propiedad a favor del Municipio por el precio de $500,000.00 de los cuales únicamente se le entregaron $225,000.00. Indicó que el peticionario les había expresado tanto a ellos como al Tribunal que la propiedad estaba libre de cargas y gravámenes.

Sin embargo, adujo que mientras se llevaba a cabo los trámites del caso civil núm. DAC2007-3886, el señor Gines era la parte demandada en el pleito civil núm. DCD2010-0422 que instó el Banco Santander en su contra por cobro de dinero, ejecución de prenda y ejecución de hipoteca sobre la propiedad objeto de expropiación del pleito civil núm. DAC2007-3886. Planteó que no estaban conscientes de dicho pleito porque el señor Gines nunca lo informó. Asimismo, expresó que el 4 de mayo de 2010, el TPI dictó *Sentencia* en el caso civil núm. DCD2010-0422 mediante la cual decretó ejecutar la hipoteca a través de la venta en pública subasta de la propiedad ubicada en Vega Baja. Indicó que, a través de la venta judicial, la propiedad antes mencionada se le traspasó al Banco Santander el 19 de agosto de 2014.

Por otra parte, afirmó que con la compensación económica que recibió el señor Gines como parte del pleito civil núm. DAC2007-3886 y tras haberse ejecutado la propiedad objeto de expropiación en el caso civil núm. DCD2010-0422, este último adquirió una nueva propiedad con los fondos públicos obtenidos fraudulentamente del Municipio. De igual forma alegó que, el 16 de septiembre de 2014, el señor Ginés otorgó una escritura de Hogar Seguro sobre la aludida propiedad que se inscribió en el Registro de la Propiedad. Argumentó que dichas

actuaciones fueron dolosas, intencionales y a sabiendas de que los fondos públicos no le correspondían.

Asimismo, manifestó que en el caso civil núm. DAC2007-3886 el TPI emitió una *Resolución* el 8 de mayo de 2015 mediante la cual resolvió que el peticionario obtuvo la cantidad de $225,000.00 de manera dolosa y, por ende, debía restituirla al Municipio. Indicó que posteriormente intentaron obtener una orden de ejecución contra el señor Ginés para compeler el pago antes indicado, pero eventualmente, a saber, el 7 de octubre de 2015, el TPI dictó una *Sentencia* mediante la cual ordenó el desistimiento con perjuicio de la expropiación a la inversa por académico y le advirtió al Municipio que cualquier acción de cobro de dinero la tendría que presentar en un recurso aparte.

Por las razones antes expuestas, le solicitó al Tribunal lo siguiente: (1) que le ordenara al señor Ginés a restituirle de inmediato la cantidad de $225,000.00 más el interés legal que le correspondiera desde la fecha en que obtuvo la cantidad hasta que satisficiera el monto adeudado; (2) que le ordenara al peticionario a pagar la suma de $10,000.00 por concepto de honorarios de abogado; (3) que dictara una orden y mandamiento de ejecución contra todos los inmuebles o muebles del peticionario hasta satisfacer su deuda; (4) que declarara nula e inoficiosa el acta de hogar seguro que suscribió el señor Ginés sobre la propiedad en la que reside ya que presuntamente la adquirió con posterioridad a obtener mediante dolo y fraude la suma de $225,000.00 en fondos públicos provenientes del Municipio; y por último, (5) que le ordenara al Registrador de la Propiedad a eliminar de los registros de la finca cualquier alusión a dicho instrumento público.

El 3 de mayo de 2018, el Municipio presentó su *Contestación a la Demanda*.[2] En esta, negó la mayoría de las alegaciones en su contra por falta de información y/o creencia y presentó sus respectivas defensas afirmativas. Posteriormente, el 1 de octubre de 2018, el TPI

---

[2] Íd., págs. 25-28.

dictó una *Sentencia Parcial* en la cual declaró Ha Lugar una Solicitud de Sentencia Sumaria que presentó el Municipio.[3] En consecuencia, le ordenó al señor Ginés a restituirle de inmediato al Municipio la cantidad de $225,000.00, más los intereses legales correspondientes y ordenó el pago de $5,000.00 en concepto de honorarios de abogado por temeridad. Además, dictó una orden y mandamiento de ejecución contra todos los bienes muebles e inmuebles del peticionario hasta satisfacer la totalidad de la deuda. Sin embargo, excluyó de dicha orden y mandamiento la propiedad de adquirió el peticionario de la cual se suscribió el Acta de Hogar Seguro. Así pues, resolvió que procedía continuar los procedimientos únicamente en cuanto al asunto de la solicitud de anulación del acta de hogar seguro por fraude.

Posteriormente, el 3 de mayo de 2019, la parte demandada presentó una *Moción de Sentencia Sumaria* y enumeró cinco (5) hechos que, a su juicio, no estaban en controversia.[4] Así pues, indicó que, ante la inexistencia de hechos esenciales y pertinentes en el pleito lo que restaba resolver era si los $225,000.00 que recibió en los años 2012 al 2013 por parte del Municipio en el caso de expropiación a la inversa se utilizó para comprar su hogar principal y si, por ende, se debía anular el Acta de Hogar Seguro que se otorgó para dicha residencia. A tales efectos, planteó que la aludida propiedad se adquirió mucho antes de haber recibido los $225,000.00 por lo que era imposible que se configurara el fraude alegado y tampoco procedía anular el Acta de Hogar Seguro que se otorgó. Además, sostuvo que la cantidad de $225,000.00 se utilizó exclusivamente para sufragar los gastos de su negocio. Por último, argumentó que no procedía ningún embargo, sentencia, y/o ejecución por parte del Municipio de la deuda ya que esta no estaba reconocida como una renuncia a la protección del hogar principal al amparo de la Ley Núm. 195-2011, según enmendada,

---

[3] Íd., págs. 131-158.
[4] Íd., págs. 213-220.

mejor conocida como la *Ley del Derecho a la Protección del Hogar Principal y el Hogar Familiar*, 31 LPRA sec. 1858 *et seq.* (Ley Núm. 195).

En desacuerdo con la referida solicitud, el 28 de febrero de 2020, la parte recurrida presentó su *Oposición a Solicitud de Sentencia Sumaria.*[5] En esencia, desglosó los hechos que entendía que estaban en controversia y los que no. Específicamente, indicó que independientemente de que la parte demandada hubiese adquirido la propiedad que constituía su hogar principal con anterioridad a recibir el dinero por parte del Municipio, era un hecho incontrovertido que solicitó los beneficios de Hogar Seguro después de que conocía que el recurrido había iniciado los procedimientos de ejecución de sentencia para recuperar los $225,000.00. Añadió que la anotación de Hogar Seguro con ánimo de defraudar al Municipio no podía surtir efectos beneficiosos ni de protección para la persona que actuaba con dolo y fraude. Así pues, manifestó que era necesario llevar a cabo un descubrimiento de prueba sobre los extremos de la inscripción de la propiedad en cuestión como Hogar Seguro. De este modo, le solicitó al Tribunal que le permitiera llevar a cabo un descubrimiento de prueba y que no desestimara sumariamente el intento del Municipio de vindicar el interés público y recobrar un dinero que fue presuntamente obtenido de forma dolosa y fraudulenta por el señor Ginés.

Evaluadas las mociones que presentaron las partes, el 18 de junio de 2020, el TPI dictó una *Resolución.*[6] En primer lugar, formuló las siguientes determinaciones de hechos: (1) que la propiedad objeto de controversia se adquirió el 30 de julio de 2003 mediante la Escritura Pública Núm. 452 ante el notario público Alberto Rosario López; (2) que para las fechas del 27 de noviembre de 2012, el 16 de septiembre de 2013 y el 31 de octubre de 2013, el señor Gines recibió tres cheques de la parte demandante. Dichos cheques no se utilizaron para la compra de su hogar principal en el año 2003, y, por último; (3) que el 11 de

---

[5] Íd., págs. 305-308.
[6] Íd., págs. 312-331.

septiembre de 2014, el señor Ginés otorgó el Acta de Hogar Seguro ante el notario público Alexander Serrano Mercado bajo la Escritura Núm.

4. Luego sostuvo que los hechos en controversia eran los siguientes:

1. Si el señor Ginés al suscribir el acta de hogar seguro e inscribir la propiedad en cuestión bajo los beneficios de la ley de hogar seguro lo hizo a sabiendas y con la intención de perfeccionar una acción fraudulenta en contra del Municipio y no pagar dinero público que los demandados le desembolsaron.

2. Cuál es el balance actual del préstamo hipotecario que tenía el señor Ginés con el Banco Popular con respecto a la propiedad que inscribió como hogar seguro.

Específicamente, en cuanto al primer hecho en controversia antes expuesto el TPI expresó lo siguiente:

Aunque se reconoce que el demandado no adquirió su hogar principal mediante los desembolsos realizados por el Municipio ya que la compraventa de la misma se realizó en el 2003 mientras que tales desembolsos del dinero público fueron en el 2012 y 2013; el hecho de que el demandado obtuvo el dinero desembolsado por el Municipio de manera fraudulenta y dolosa hace pertinente examinar, antes de tomar una determinación final en el presente caso, si el mero acto de otorgamiento de un acta de hogar seguro e inscribir la propiedad para gozar de los beneficios que otorga la Ley Núm. 195-2011 se hizo a sabiendas y con la intención de darle culminación al mencionado acto fraudulento e impedir que el Municipio recobrara el dinero desembolsado en caso de que se percataran del fraude y tomaran acciones legales.

Tomando en consideración que todavía existían hechos esenciales en controversia, el TPI resolvió que era necesario que se continuara con el descubrimiento de prueba en torno al asunto de la solicitud que presentó el peticionario sobre la anulación de acta de hogar seguro por fraude y que este se atendiera mediante un juicio en su fondo. Por los motivos antes expuestos, el TPI declaró No Ha Lugar la moción de Sentencia Sumaria que presentó el señor Gines. La parte demandada solicitó reconsideración de este dictamen, pero el TPI la declaró No Ha Lugar.[7] Aún en desacuerdo, el peticionario presentó un recurso de *Certiorari* ante este Tribunal y un panel hermano dictó

---

[7] Íd., págs.332-337 y pág. 350.

Sentencia el 30 de octubre de 2020 en el caso núm. KLCE202001001 desestimando el recurso por falta de jurisdicción por tardío.[8]

Tras varios trámites procesales que no son pertinentes discutir, el 17 de enero de 2023, el señor Gines presentó una *Moción de Sentencia Sumaria.*[9] En esta, enumeró ocho (8) hechos que, a su juicio, no estaban en controversia. Puntualizó que, ante la inexistencia de hechos esenciales y pertinentes en controversia, lo que le restaba al TPI determinar era que el acta de hogar seguro que se otorgó el 11 de septiembre de 2014, no era anulable pues según el peticionario, este no era un contrato entre las partes del presente caso, sino un derecho otorgado mediante la Ley Núm. 195, *supra.* Además, planteó que el TPI debía resolver que no existía evidencia que demostrara que la intención del demandado al momento de otorgar el Acta de Hogar Seguro era para perfeccionar una acción fraudulenta en contra del Municipio. Argumentó que su intención era únicamente beneficiarse de los propósitos que contempla la propia exposición de motivos de la Ley Núm. 195, *supra.* A ello le añadió que, el hecho de que surgió una acreencia a favor del Municipio no debía menoscabar su derecho a "tener certeza jurídica en cuanto a su hogar" más aun cuando se había probado que los $225,000.00 no se habían utilizado para el pago de la deuda que gravaba su hogar. Además, reafirmó que el Art. 5 de la Ley Núm. 195, 31 LPRA sec. 1858b, no comprendía una deuda a un Municipio como excepción para un embargo, sentencia, y/o ejecución como la que se persigue en el presente caso. Por último, manifestó que dictar sentencia sumaria en cuanto al asunto solicitado no privaba al recurrido de su derecho a ejecutar la sentencia ya que la podía hacer efectiva mediante otros bienes y no en la propiedad que constituye su hogar principal. A tales efectos, solicitó que declarara Ha Lugar su Sentencia Sumaria.

---

[8] Íd., págs. 352-357.
[9] Íd., págs. 417-430.

En respuesta, el 8 de febrero de 2023, el Municipio presentó una *Oposición a Solicitud de Sentencia Sumaria* [...].[10] En síntesis, reiteró los mismos argumentos que expuso en su oposición del 28 de febrero de 2020. Es decir, se limitó a argumentar que independientemente de que el señor Ginés adquiriera la propiedad que luego protegió con los beneficios de la Ley de Hogar Seguro antes de recibir los $225,000.00, lo hizo con el único propósito de defraudar al erario. Ello, ya que, según ellos, el peticionario solicitó los beneficios del hogar seguro a sabiendas de que el Municipio había iniciado los procedimientos de ejecución de sentencia por los hechos en que le habían ejecutado la propiedad al señor Ginés. Reiteraron que lo antes expuesto era un acto fraudulento que no podía surtir efectos beneficiosos ni de protección para el peticionario. Cabe destacar que, mediante este escrito, el Municipio no estableció los hechos que consideraba que estaban en controversia y que impedían que se dictara sentencia sumaria. Tampoco desglosó los hechos que consideraba que no estaban en controversia. Sin embargo, solicitó que no se dictara Sentencia Sumaria ya que dicho proceder le daría protección al dolo y la obtención malintencionada de fondos públicos.

El 12 de abril de 2023, el señor Ginés presentó una *Moción Reiterando Sentencia Sumaria* y el 15 de junio de 2023, el Municipio presentó su *Dúplica a "Moción Reiterando Sentencia Sumaria"* [...].[11] Evaluadas las posiciones de ambas partes, el 15 de noviembre de 2023, el TPI dictó una *Resolución* que se notificó el 22 de noviembre de 2023.[12] En primer lugar, enumeró cuatro (4) determinaciones de hechos de las cuales las primeras tres (3) eran las mismas de la *Resolución* que dictó el 18 de junio de 2020. Como su cuarta determinación de hechos añadió que no había controversia en que de acuerdo con el *payoff statement* que emitió el Banco Popular de Puerto Rico para el 8 de

---

[10] Íd., págs. 444-447.
[11] Íd., págs. 454-459 y págs. 466-469.
[12] Íd., págs. 480-503.

marzo de 2023, el monto de la deuda hipotecaria es de $88,117.55. Sin embargo, reiteró que aún existía controversia en si el señor Ginés suscribió el acta de hogar seguro a favor de su hogar principal a sabiendas y con la intención de perfeccionar una actuación fraudulenta en contra del Municipio y no pagar el dinero que este último le desembolsó. Asimismo, puntualizó que había controversia en torno a si las actuaciones del señor Ginés relacionadas con el proceso de hogar seguro fueron dolosas.

Luego de exponer lo antes expuesto, indicó que luego de estudiarse el expediente era evidente que la solicitud de Sentencia Sumaria que presentó el peticionario en esencia contenía los mismos argumentos que expuso en su solicitud de Sentencia Sumaria del 3 de mayo de 2019. Por esta razón, expresó que dicha solicitud era un intento por parte del peticionario para volver a relitigar los asuntos ya planteados y que el Tribunal reconsidere ciertas cuestiones de las cuales ya dispuso en su *Resolución* del 18 de junio de 2020. A tales efectos, afirmó que se reiteraba en que dichos asuntos debían ser atendidos en un juicio en su fondo. Sostuvo que del presente caso se desprendían elementos subjetivos de credibilidad e intención sumado a asuntos de propósitos mentales, así como también serias dudas sobre los planteamientos esbozados por cada una de las partes que dificultaban que el caso se pudiese resolver mediante la vía sumaria. Por último, señaló que lo único que se aclaró desde la *Resolución* del 18 de junio de 2020 era el hecho en controversia relacionado al balance actual del préstamo hipotecario que tenía el demandado con el Banco Popular respecto a la propiedad inscrita como hogar seguro.

Por otro lado, manifestó que ambas partes incumplieron con las exigencias que contempla la Regla 36 de Procedimiento Civil, 32 LPRA Ap. V, R.36 en cuanto a las solicitudes de Sentencia Sumaria. Tomando en consideración lo antes mencionado en conjunto con el hecho de que todavía existían asuntos en controversia, el TPI se reafirmó en su

decisión de celebrar un juicio plenario mediante el cual las partes tuviesen la oportunidad de presentar y evaluar la prueba documental y testimonial pertinente para que se pueda llegar a una determinación conforme a derecho. Consecuentemente, declaró No Ha Lugar a la Sentencia Sumaria que presentó el señor Gines.

Inconforme con este dictamen, el 22 de diciembre de 2023, el peticionario presentó el recurso de epígrafe y formuló los siguientes señalamientos de error:

> **Erró el Tribunal de Primera Instancia, Sala de Bayamón, al denegar la moción de Sentencia Sumaria presentada por el peticionario, al concluir que la misma, es un intento de relitigar unos asuntos ya planteados ante dicho foro mediante la Resolución de 18 de junio de 2020 y que se reconsidere la misma.**

> **Erró el Tribunal de Primera Instancia, Sala de Bayamón, al denegar la moción de Sentencia Sumaria presentada por el peticionario, y concluir que existe controversia si el peticionario, al suscribir el acta de hogar seguro e inscribir su propiedad bajo los beneficios de la Ley de Hogar Seguro, lo hizo a sabiendas y con la intención de perfeccionar una acción fraudulenta en contra del Municipio de Vega Baja.**

> **Erró el Tribunal de Primera Instancia, Sala de Bayamón, al denegar la moción de Sentencia Sumaria presentada por el peticionario, y concluir que existe controversia si las actuaciones del peticionario, en torno a todo el proceso sobre el hogar seguro fueron dolosas.**

> **Erró el Tribunal de Primera Instancia, Sala de Bayamón, al denegar la moción de Sentencia Sumaria presentada por el peticionario, y negarse a concluir que la escritura número 4 de hogar seguro, no es anulable pues no es un contrato entre las partes del presente caso, sino un derecho otorgado por virtud de la Ley Número 195 del 13 de septiembre de 2011, mejor conocida como la Ley del Derecho a la Protección del Hogar Principal y el Hogar Familiar y por la Constitución del Estado Libre Asociado de Puerto Rico, en la Sección 7 del Artículo 11.**

Atendido el recurso, el 9 de enero de 2024, emitimos una *Resolución* mediante la cual le concedimos a la parte recurrida hasta el 12 de enero de 2024 para presentar su postura al recurso. Oportunamente, el Municipio presentó un *Memorando en Oposición a*

*la Solicitud de Certiorari* y negó que el TPI cometiera los errores que el señor Ginés le imputó.

Con el beneficio de la comparecencia de ambas partes procedemos a resolver. Veamos.

**II.**

-A-

El *certiorari* es el vehículo procesal extraordinario utilizado para que un tribunal de mayor jerarquía pueda corregir un error de derecho cometido por un tribunal inferior. *Torres González v. Zaragoza Meléndez,* 2023 TSPR 46, 211 DPR ___ (2023). Los tribunales apelativos tenemos la facultad para expedir un *certiorari* de manera discrecional. Íd. Esta discreción se define como "el poder para decidir en una u otra forma, esto es, para escoger entre uno o varios cursos de acción". *García v. Padró,* 165 DPR 324, 334 (2005). Asimismo, discreción es una forma de razonabilidad aplicada al discernimiento judicial para llegar a una conclusión justa. Íd., pág. 335. Ahora bien, la aludida discreción que tiene este foro apelativo para atender un *certiorari* no es absoluta. Íd. Esto ya que no tenemos autoridad para actuar de una forma u otra, con abstracción total al resto del derecho, pues ello constituiría abuso de discreción. Íd. Así, "el adecuado ejercicio de la discreción judicial esta inexorable e indefectiblemente atado al concepto de la razonabilidad". Íd.

La Regla 52.1 de Procedimiento Civil, 32 LPRA Ap. V, R. 52.1, establece que el recurso de *certiorari* para resolver resoluciones u órdenes interlocutorias dictadas por el Tribunal de Primera Instancia, será expedido por el Tribunal de Apelaciones cuando se recurre de: (1) una resolución u orden bajo la Regla 56 (Remedios Provisionales) y la Regla 57 (*Injunction*) de las Reglas de Procedimiento Civil; (2) la denegatoria de una moción de carácter dispositivo y; (3) por excepción de: (a) decisiones sobre la admisibilidad de testigos de hechos o peritos esenciales; (b) asuntos relativos a privilegios probatorios; (c) anotaciones de rebeldía; (d) casos de relaciones de familia; (e) casos que

revistan interés público; y (f) cualquier otra situación en la que esperar a la apelación constituiría un fracaso irremediable de la justicia.

En otros términos, al determinar si procede expedir o denegar un recurso de *certiorari* en el cual se recurre de un asunto postsentencia, debemos evaluar únicamente los criterios enmarcados en la Regla 40 del Tribunal de Apelaciones, 4 LPRA Ap. XXII-B. Íd. La aludida regla establece lo siguiente:

> El tribunal tomará en consideración los siguientes criterios al determinar la expedición de un auto de certiorari o de una orden de mostrar causa:
>
> (A) Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.
>
> (B) Si la situación de hechos planteada es la más indicada para el análisis del problema.
>
> (C) Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.
>
> (D) Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.
>
> (E) Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.
>
> (F) Si la expedición del auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.
>
> (G) Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia. 4 LPRA Ap. XXII-B, R. 40.

Ninguno de estos criterios es determinante por sí solo para el ejercicio de jurisdicción y tampoco constituyen una lista exhaustiva. *García v. Padró*, supra, pág. 335. La norma vigente es que los tribunales apelativos podremos intervenir con las determinaciones discrecionales del Tribunal de Primera Instancia cuando este haya incurrido en arbitrariedad, craso abuso de discreción o en un error en la interpretación o aplicación de cualquier norma procesal o de derecho sustantivo. *Pueblo v. Rivera Santiago*, 176 DPR 559, 581 (2009).

-B-

En esencia, el principio rector de las Reglas de Procedimiento Civil es proveerles a las partes envueltas en un pleito legal, una solución justa, rápida y económica en todo procedimiento. Regla 1 de Procedimiento Civil, 32 LPRA Ap. V, R.1. El mecanismo de sentencia sumaria provisto en la Regla 36 de Procedimiento Civil, *supra*, hace viable este objetivo en aquellos casos en que surja de forma clara que no existen controversias materiales de hechos que requieren ventilarse en un juicio plenario y el derecho así lo permita.

Según *Verá v. Dr. Bravo*, 161 DPR 308, 334-335 (2004) este Foro Apelativo utilizará los mismos criterios que el Tribunal de Primera Instancia al determinar si procede una sentencia sumaria. Sin embargo, el Tribunal Supremo especifica que, al revisar la determinación de primera instancia sólo podemos considerar los documentos que se presentaron ante el TPI. Íd. Lo anterior, debido a que "las partes no pueden añadir en apelación *exhibits*, deposiciones o affidávits que no fueron presentadas oportunamente en el foro de primera instancia, ni pueden esbozar teorías nuevas o esgrimir asuntos nuevos por primera vez ante el foro apelativo". Íd. Además, sólo podemos determinar si existe o no alguna controversia genuina de hechos materiales y esenciales, y si el derecho se aplicó de forma correcta. Íd. Es decir, no podemos adjudicar los hechos materiales y esenciales en disputa, ya que esta tarea le corresponde al Tribunal de Primera Instancia. Íd.

Por otro lado, en *Meléndez González et al. v. M. Cuebas,* 193 DPR 100, 118 (2015), el Tribunal Supremo estableció que al revisar una determinación del foro primario en la que se concedió o denegó una moción de sentencia sumaria debemos: (1) examinar de *novo* el expediente; (2) revisar que la moción de sentencia sumaria y su oposición cumplan con los requisitos de forma codificados en la Regla 36 de Procedimiento Civil, *supra,* y con los discutidos en *SLG Zapata-Rivera v. J. Montalvo,* 189 DPR 414 (2013); (3) en el caso de una revisión de una sentencia dictada sumariamente, debemos revisar si en

realidad existen hechos materiales en controversia, y de haberlos, exponer concretamente cuáles están en controversia y cuáles no; y (4) de encontrar que los hechos materiales no están en controversia, debemos revisar de *novo* si el Tribunal de Primera Instancia aplicó correctamente el derecho. Véase, además, *Rivera Matos, et al. v. Triple-S et al.,* 204 DPR 1010, 1025 (2020).

## III.

Nos corresponde justipreciar si debemos ejercer nuestra facultad discrecional al amparo de los criterios enmarcados en la Regla 40 del Tribunal de Apelaciones, *supra.* Luego de examinar el expediente a la luz de los criterios de la Regla 40 del Tribunal de Apelaciones, *supra,* no identificamos razón por la cual este Foro deba intervenir. Ello, ya que no se presentan ninguna de las situaciones que allí se contemplan. Recordemos que nuestro ordenamiento jurídico nos brinda la discreción de intervenir en aquellos dictámenes interlocutorios o postsentencia en los que el foro de primera instancia haya sido arbitrario, cometido un craso abuso de discreción o cuando, de la actuación del foro, surja un error en la interpretación o la aplicación de cualquier norma procesal o de derecho sustantivo. Reiteramos que en el recurso que aquí atendemos no se nos ha demostrado que haya alguno de estos escenarios.

## IV.

Por los fundamentos antes expuestos, ***denegamos*** el recurso de epígrafe.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones